

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JULIE A. KORBA, for herself and on behalf of her children, JADE KORBA and JOHN KORBA, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | ) No. 06 C 0172 |
| v. | ) Judge Ruben Castillo |
| JO ANNE B. BARNHART, in her official Capacity as Commissioner of Social Security, | )<br>)<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Julie A. Korba ("Korba") applied for a lump-sum death payment under Section 202(I) of the Social Security Act (the "Act"), 42 U.S.C. § 402(i), as the widow of Terry L. Mentgen ("Mentgen"), and for child's insurance benefits under 42 U.S.C. § 402(d) on behalf of her children John Korba ("John") and Jade Korba ("Jade"), Mentgen's stepchildren.[1] (A.R. 35-42.) After a hearing, an Administrative Law Judge ("ALJ") issued a decision denying all of Korba's claims. (A.R. 16-22.) The parties have filed cross-motions for summary judgment. Korba, on behalf of herself and her children, urges reversal of the ALJ's decision denying benefits. (R. 22, Mem. in Supp. of Mot. for Summ. J. by Julie A Korba ("Pl. Mem.").) The Commissioner of the Social Security Administration ("SSA") seeks affirmance of the ALJ's decision. (R. 29, Commissioner's Mem. in Supp. of Mot. for Summ. J. ("Def. Mem.").) For the

---

[1] Citations to (R. ___.) refer to the record number that a document is assigned on the docket sheet for this case. Citations to (A.R. ___.) refer to the administrative record of these proceedings, which was filed as entry number 9 on this case's docket sheet.

following reasons, Korba's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted.

## PROCEDURAL HISTORY

On June 19, 2000, Korba applied for Social Security benefits on behalf of herself and her children. (A.R. 35-42.) The applications were denied initially and on reconsideration. (A.R. 43-53.) Korba thereafter requested a hearing before an ALJ. (A.R. 54.) After a hearing at which Korba and her children were represented by counsel, the ALJ issued three separate decisions denying Korba's applications. (A.R. 19-22; Pl. Memo., Attachment 1 (ALJ Decision in the Case of John Korba) & Attachment 2 (ALJ Decision in the Case of Jade Korba).) The Appeals Council denied Korba's request for review, rendering the ALJ's decisions final for purposes of 42 U.S.C. § 405(g). (A.R. 3-5.)

## RELEVANT FACTS

Korba and Mentgen were married on December 26, 1996. (A.R. 20, 185.) Korba had two children from a previous marriage: John, then 14 years old, and Jade, then 11 years old. (A.R. 37, 186.) Less than a year later after his marriage to Korba, Mentgen was diagnosed with terminal colon cancer. (A.R. 187.) Shortly thereafter, in March 1997, he applied for Social Security disability insurance benefits. (A.R. 78.) On his application, Mentgen stated that he was married to Korba and had no dependent children. (*Id.*) He was awarded benefits in April 1997 retroactive to October 1996. (*Id.*) Mentgen died of cancer in July 1999. (A.R. 20, 80.)

Throughout their marriage, Mentgen and Korba maintained separate residences. (A.R. 187.) Korba continued to live in the home she owned prior to her marriage in Ottawa, Illinois, where the children attended school and where she worked during the week. (A.R. 187, 189.) Mentgen maintained a home in McNabb, Illinois, approximately 40 miles away. (A.R. 187-90.)

Korba testified that she and the children spent most weekends at Mentgen's house and that during the week either Mentgen would visit her and the children in Ottawa if he were physically able, or they would visit him in McNabb. (A.R. 188-189.) She estimated that they spent a minimum of two nights a week together. (A.R. 189.) Korba further testified that Mentgen maintained his separate residence in McNabb because he wanted his biological children to inherit the property upon his death. (A.R. 187-188.) The two discussed merging their households; however, no specific plans to that effect were ever made. (A.R. 98-106.)

In addition to maintaining separate homes, Mentgen and Korba kept separate bank accounts, investments and real estate holdings, and also filed separate tax returns. (A.R. 98.) During the years of their marriage, Korba filed income tax returns indicating that she was the head of the household and listing her two children as dependents. (A.R. 80, 94, 98.) Mentgen did not provide significant financial support for the children during the marriage. (A.R. 98.) He provided food and shelter during their visits in McNabb. (A.R. 195.)

According to Korba's testimony and the testimony of her daughter, the children viewed Mentgen as a father figure, and he was reportedly the only male role model in their lives. (A.R. 190, 197.) Korba testified that Mentgen assumed a parental role by enforcing household rules and requiring the children to do chores when they stayed with him. (A.R. 190-91.) Jade testified that she and Mentgen enjoyed doing activities together, including shopping, hiking, and sledding. (A.R. 197-98.) The family occasionally went shopping together at nearby malls, and once took a weekend trip together. (A.R. 192.) These outings occurred only when Mentgen was well enough; however, he was ill and often in a great deal of pain during much of the marriage. (A.R. 189.) Even when Mentgen was ill, the family would watch television and eat dinner together during their visits. (A.R. 198.)

3

On August 20, 1998, Mentgen filed for divorce from Korba. (A.R. 192.) No judgment was ever entered, and the case was ultimately dismissed due to Mentgen's death in July 1999. (A.R. 80, 192.) Korba testified that she contested the divorce because she loved Mentgen and hoped they would be able to reconcile. (A.R. 193-94.) She surmised that Mentgen filed for divorce because he was angry she could not spend more time with him, as she had become overwhelmed by her obligations, which included working, caring for Mentgen, and caring for her own children. (A.R. 193.) She testified that 18 months into their marriage, she suffered a "nervous breakdown" and as a result was often "nonfunctional." (A.R. 193.)

Based on testimony at the hearing and documentary evidence in the record, the ALJ denied the children's claims, finding that they did not satisfy the dependency requirements applicable to stepchildren. (R. 22, Pl. Mem., Attachs. 1, 2.) The ALJ also denied Korba's claim for benefits because he found she was not "living in the same household" with Mentgen for purposes of the Act. (A.R. 19-22.) In this action, Korba raises two claims: (1) the ALJ erred in interpreting the term "living with," as defined in 20 C.F.R. § 404.366(c), when evaluating the children's claim for benefits; and (2) the ALJ erred in interpreting the term "living in the same household," as defined in 20 C.F.R. § 404.347, in evaluating Korba's claim for benefits. (Pl. Mem. at 3-4.)

## LEGAL STANDARD

The Act authorizes judicial review of the SSA's final decision denying benefits. 42 U.S.C. § 405(g). Because the Appeals Council denied Korba's request for review, the agency's final decision for purposes of the Act is the decision of the ALJ. *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006). Under the Act, a reviewing court will reverse the ALJ's decision if it is unsupported by substantial evidence or if the ALJ applied an erroneous legal

4

standard. 42 U.S.C. § 405(g); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In determining whether the ALJ's decision is supported by substantial evidence, the Court conducts a "critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (citation and internal quotation marks omitted). The Court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez*, 336 F.3d at 539.

## ANALYSIS

The Act provides for disability benefits when a claimant is found to be disabled. 42 U.S.C. § 423(a)(1)(E); *Briscoe*, 425 F.3d at 351. The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is no dispute that Mentgen was "disabled" for purposes of the Act, as he was receiving disability insurance benefits at the time of his death.

### I.     Surviving Children's Benefits

The Act provides that the surviving child of an individual who dies while fully insured is eligible to receive benefits if the child: files an application; is under age 18 and unmarried at the time of application; and was dependent on the individual who died either at the time of death, during the period of disability, or at the time the individual became entitled to benefits. 42

5

U.S.C. § 402(d); 20 C.F.R. § 404.350. A stepchild may also obtain benefits, provided the child's biological parent was married to the insured at least nine months prior to the insured's death. 42 U.S.C. § 402(d)(4); 20 C.F.R. § 404.363 & 20 C.F.R. § 404.357. The stepchild must also satisfy the dependency requirement of the Act by showing that he or she received at least one-half of his or her support from the insured. 42 U.S.C. § 402(d)(4). Prior to 1996, a stepchild could alternatively demonstrate dependency by establishing that he or she was "living with" the insured, even if not receiving financial support from the insured. The Act was amended by Congress to eliminate the "living with" provision, such that effective July 1996, stepchildren must demonstrate that the insured provided one-half of their support. Contract with America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 847. Congress' stated purpose in amending the Act was to ensure that surviving children's benefits were paid "only to stepchildren who are truly dependent on the stepparent for their support." *See* H.R. Rep. 104-379 (1995). Despite this change in the statute, the Social Security regulations have not been amended. *See* 20 C.F.R. § 404.363; *see also Lody-Rhodes v. Barnhart*, 343 F.Supp.2d 660, 663 & n.2 (N.D. Ill. 2004) (applying current version of § 402(d)(4) but noting that 20 C.F.R. § 404.363 still contains pre-amendment "living with" language).

There is no dispute here that Mengten was fully insured at the time of his death, that John and Jade filed an application for surviving children's benefits, and that they were under 18 and unmarried at the time of their applications. (Pl. Memo. 8; Def. Memo. at 7.) There is also no dispute that John and Jade were Mengten's stepchildren for at least nine months prior to his death, since their mother married Mentgen in December 1996 and he died in July 1999. (*Id.*) The only disputed issue is whether the children were "dependent" on Mentgen so as to be entitled to surviving children's benefits. 42 U.S.C. § 402(d). As noted above, under the current

6

law the only means of demonstrating a stepchild's dependency is by showing that the insured provided at least one-half of the child's support. The regulations define "one-half support" as making regular contributions for the child's ordinary living costs, with the amount of those contributions equaling or exceeding one-half of the child's ordinary living expenses. 20 C.F.R. § 404.366(b). Ordinary living expenses include the cost of food, shelter, routine medical care and similar necessities; contributions may be in the form of cash, goods, or services. *Id.* The dependency requirement must be met at one of the following times: at the time the application for benefits is filed, if the insured is still alive; at the time of the insured's death, if the insured is deceased when the application is filed; or at the time the insured became entitlted to disability benefits. 42 U.S.C. § 402(d)(1)(C).

Because Mentgen was deceased when the children applied for benefits, they must demonstrate that they were dependent on Mentgen either when he began receiving disability benefits in April 1997 or when he died in July 1999. The ALJ determined that Mentgen did not provide one-half of the children's support during either of these periods. On a questionnaire completed in October 2001, Korba specifically answered "no" to questions inquiring whether Mengten provided one-half support for the children during either April 1996-March 1997 and July 1998-July 1999. (A.R. 98.) At the ALJ hearing Korba testified that during their marriage, Mengten provided food and shelter for the children only when they stayed at his house on the weekends. (A.R. 195.) Indeed, Korba concedes that Mengten did not provide one-half support for either of the children. (Pl. Memo. at 8; Pl. Reply to Def. Mem. in Supp. of Mot. for Summ. J. ("Pl. Reply") at 3.)

Instead, apparently unaware of the change in § 402(d) that occurred in 1996, Korba devoted the bulk of her motion to arguing that the children satisfy the dependency requirement

7

because they were "living with" Mentgen. (Pl. Mem. at 7-10.) Alerted to the statutory change by Defendant's cross-motion, Korba now appears to concede that the children's claims fail under the current statute. (R.31, Pl. Mot. for Suppl. Br. at 1.) Nonetheless, in her reply brief, she raises two additional arguments in support of the children's claim for benefits. First, she suggests that despite the amendment to the statute, the children should be permitted to "rely upon" the unamended regulation because it would be "harsh and burdensome to require that an applicant for administrative benefits be required to look further than the agency's own regulations to determine whether they qualify for benefits" in any given case. (Pl. Reply at 4.) Korba cites no authority for this argument, and to the contrary, it is well settled that an agency regulation cannot "trump" the plain language of the statute under which it is promulgated; to the extent the two conflict, the agency regulation would be invalid. *K-Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 292 (1988); *United States v. Larionoff*, 431 U.S. 864, 873 & n.12 (1977); *Robbins v. Bentsen*, 41 F.3d 1195, 1198-99 (7th Cir. 1994).

Nevertheless, even if the Court were to presume that the earlier version of the statute and its corresponding regulation applied, the children's claim for benefits would still fail. Under the prior version of the statute, the children would be required to demonstrate they the were "living with" Mentgen at the time he became eligible for benefits or the time of his death. "Living with" is defined by the regulation as follows:

> You are living with the insured if you ordinarily live in the same home with the insured and he or she is exercising, or has the right to exercise, parental control and authority over your activities. You are living with the insured during temporary separations if you and the insured expect to live together in the same place after the separation. Temporary separations may include the insured's absence because of active military service or imprisonment if he or she still exercises parental control and authority. However, you are not considered to be living with the insured if you are in active military service or in prison. If 'living with' is used to establish

8

>
> dependency for your eligibility to child's benefits and the date of
> your application is filed is used for establishing the point for
> determining dependency, you must have been living with the
> insured throughout the month your application is filed in order to be
> entitled to benefits for that month.

20 C.F.R. § 404.366(c). Korba argues that the children "lived with" Mentgen under the above definition because they often spent weekends at his home, engaged in activities with him, and had visits with him when he came to Korba's home in Ottawa during the week. (Pl. Mem. at 9-10.) She asserts, without any citations, that a flexible meaning of "living in the same home" was intended by the regulation, and that spending time in two different households qualifies as living together. (Pl. Mem. at 9.)

The ALJ determined that the children were not "living with" Mentgen because they spent the bulk of their time in their mother's home in Ottawa, were registered for and attended school in Ottawa, and spent only a limited amount of time at Mentgen's home during periodic visits. (ALJ Decision in the Case of John Korba at 3-5, ALJ Decision in the Case of Jade Korba, at 3-5.) The ALJ also relied on the fact that Korba filed income tax returns during the marriage listing herself as "head of household" with two dependent children; that Mengten had not listed the children as dependents on his application for disability benefits; and that Mentgen filed for divorce approximately eight months prior to his death. (*Id.*) Upon careful review, the Court finds the ALJ's determination that the children were not "living with" Mentgen supported by substantial evidence.

Nor does the Court find any support for Korba's proposed interpretation of the regulation. The plain language of the regulation states that the child must "ordinarily live in the same home with the insured." 20 C.F.R. § 404.366(c). It is clear from the record that John and Jade did not *ordinarily* live in the same home as Mentgen. Instead they lived in a separate home

9

with their mother approximately 40 miles away, visiting Mentgen's home on weekends and occasionally during the week. Although the regulation permits temporary separations, this provision would not apply here because Korba and Mentgen had a long-term living arrangement whereby each maintained their own separate residence; in addition, Mentgen filed for divorce from Korba prior to his death. *See Shaw v. Heckler*, 781 F.2d 675, 677-78 (9th Cir. 1985) (stepchild not "living with" insured where parents were living separately and insured had filed petition for dissolution of marriage prior to his death). Even assuming the children were given the benefit of the earlier version of the statute, the Court can discern no error in the ALJ's determination that they do not satisfy the dependency requirements of the Act.[2]

Korba also argues that § 402(d)(4) in its amended form violates the children's right to equal protection under the Fifth Amendment of the U.S. Constitution. (Pl. Reply at 5; Pl. Motion for Supplemental Briefs at 1-2.) This argument is not well-defined, but Korba appears to argue that the statute as amended places a more onerous burden on stepchildren as a class than on an insured's biological children in establishing eligibility for benefits. (Pl. Reply at 5.) Korba requests an opportunity to fully brief the constitutional issue; however, the Court finds supplemental briefing unnecessary given that, as discussed above, the children's claim for benefits would fail even if the statute had not been amended. *See Rehman v. Gonzales*, 441 F.3d 506, 508 (7th Cir. 2006) ("Non-constitutional arguments always come first; constitutional contentions must be set aside until their resolution is unavoidable."). Accordingly, Plaintiff's

---

[2] To the extent the ALJ erroneously relied on the earlier version of the statute, the error is harmless, since the ALJ alternatively concluded that the children could not establish dependency because Mentgen was not contributing one-half of their support, which is the relevant inquiry under the current statute. *See Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error analysis to Social Security disability determination).

motion for supplemental briefing is denied, and the Court affirms the decision of the ALJ denying benefits to John and Jade.

## II. Lump-Sum Widow's Benefit

Under the Act, the surviving spouse of an insured may obtain a lump-sum death payment of $255. 42 U.S.C. § 402(i)(1). To establish eligibility for this payment, Korba must show that she was "living in the same household" with Mentgen when he died. 42 U.S.C. § 402(i). Social Security regulations define "living in the same household" to mean that the spouses "customarily lived together as husband and wife in the same residence." 20 C.F.R. § 404.347. As in the children's benefits regulation, there is a provision which permits temporary separations under certain circumstances, but Korba does not argue that this provision applies to her. *See* 20 C.F.R. § 404.347.

In denying Korba's application, the ALJ determined that Korba was Mentgen's surviving spouse but found her ineligible for the lump-sum death benefit because she and Mentgen did not live in the same household. (A.R. at 19-22.) The ALJ relied on the following facts: Korba and Mentgen continued to live in their premarital homes throughout their marriage; they maintained separate bank accounts, investments and other assets; and Korba filed income tax returns as "head of household" for herself and her two children. Additionally, Mentgen's divorce petition remained pending at the time of his death. The Court finds substantial evidence in the record to support the ALJ's determination that Korba and Mentgen were not "living in the same household" for purposes of the Act. Korba argues that the ALJ erred because the regulations were intended to have a flexible meaning such that "'residence' can mean more than one residence in which both spouses live." (Pl. Mem. at 11.) Korba does not cite any authority for this interpretation. The ALJ interpreted the statute according to its plain meaning, concluding

11

that although Korba and Mentgen visited each other regularly, they were living in separate residences, and the Court can discern no error in this determination. Accordingly, the Court affirms the ALJ's decision denying benefits to Korba.

## CONCLUSION

For all of the above reasons, Korba's motion for summary judgment is denied (R. 20-22) and the Commissioner's cross-motion for summary judgment is granted (R. 28-29). In addition, Korba's motion for supplemental briefing is denied. (R. 31-33.)

Date: August 28, 2006        ENTERED: _____
                             Ruben Castillo
                             United States District Judge